ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JAVIER A. LÓPEZ RAMOS<br><br>Recurrido<br><br>v.<br><br>ADLYN L. PADILLA RODRÍGUEZ<br><br>Peticionaria | TA2025CE00761 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.:<br>C DI 2021-0674<br><br>Sobre:<br>Divorcio (R.I.) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Comparece ante esta Curia, la Sra. Adlyn R. Padilla Rodríguez (señora Padilla Rodríguez o Peticionaria) y solicita que revoquemos la *Resolución Interlocutoria* que el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario) notificó, el 15 de octubre de 2025. Mediante el referido dictamen, el foro primario ordenó a la señora Padilla Rodríguez proveer al Sr. Javier A. López Ramos (señor López Ramos o Recurrido), la dirección en donde ella reside con el hijo menor de edad que comparten, más el pago de una sanción de $500.00.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos la *Resolución Interlocutoria* recurrida, a los efectos de ordenar la celebración de una vista evidenciaria ante el TPI.

**I.**

La señora Padilla Rodríguez y el señor López Ramos son padres de un menor que actualmente tiene 16 años. A partir del divorcio de las partes, el menor ha estado bajo la custodia de la señora Padilla Rodríguez. En lo atinente a las relaciones

paternofiliales, la señora Padilla Rodríguez traslada al menor a la residencia de los abuelos maternos en donde el señor López Ramos lo recoge.

Luego de múltiples incidencias procesales que resultan innecesarios pormenorizar,[1] el foro primario celebró una vista, el 9 de abril de 2025, para atender varios escritos pendientes, entre ellos, una solicitud del señor López Ramos para que la señora Padilla Rodríguez divulgue la dirección en donde reside con el menor, sustentado en que, desconoce dónde vive su hijo y si es un lugar adecuado y seguro. La señora Padilla Rodríguez se opuso al referido petitorio bajo el argumento de que, la reglamentación aplicable a la fijación de pensiones alimentarias no le exige divulgar su dirección residencial, además de que, el señor López Ramos recoge al menor en casa de los abuelos maternos para relacionarse con él sin controversia alguna.

Surge de la *Minuta* de la referida vista que, a preguntas del foro primario, las partes informaron que no hay ningún caso de violencia doméstica ni orden de protección vigente entre ellos. Evaluada la postura de las partes, el foro primario adjudicó la solicitud del señor López Ramos parcialmente favor de la señora Padilla Rodríguez. En particular, ordenó a la señora Padilla Rodríguez proveer la dirección física en donde vive con el menor, <u>únicamente</u> a la trabajadora social de la Unidad Social de Relaciones de Familia y Asuntos de Menores, sin hacerla constar en el expediente. Además, el TPI refirió este asunto a la trabajadora social para que visitara e investigara la residencia de la señora Padilla Rodríguez en aras de someter el correspondiente informe.

---

[1] Cabe señalar que, en una ocasión anterior, la señora Padilla Rodríguez acudió ante esta Curia (Recurso Núm. KLCE202400791 con voto disidente sin escrito del Juez Rodríguez Flores) para cuestionar una determinación del foro primario, mediante la cual, aprobó y acogió el *Informe y Recomendaciones* de la Examinadora de Pensiones Alimentarias. Realizado el análisis de rigor, expedimos el auto de *Certiorari* y revocamos el dictamen impugnado a los únicos efectos de disponer que el gasto de alquiler de vivienda debe incluirse al computar la pensión alimentaria fijada a favor del menor.

Realizada la investigación correspondiente, la Unidad Social presentó una *Moción Informativa en Cumplimiento de Orden,* fechada el 14 de mayo de 2025. De su comparecencia se desprende que: la trabajadora social visitó el hogar de la señora Padilla Rodríguez, el 12 de mayo de 2025; que la señora Padilla Rodríguez vive alquilada y, según el contrato de alquiler, paga $668.00 mensuales; describió la habitación del menor como acorde con su etapa de desarrollo; que el ambiente comunitario en donde se encuentra la residencia es de baja incidencia criminal y problemas sociales; detalló que la relación vecinal es distante, siendo los vecinos más cercanos mayores de edad; que la residencia está accesible a hospitales, escuelas y lugares recreativos; y que la señora Padilla Rodríguez posee un vehículo de motor propio para transportarse.

Surge del expediente que, el 19 de mayo de 2025, el TPI dio por cumplida la *Orden* dirigida a la Unidad Social, sin la oposición del señor López Ramos. Posteriormente, el 11 de junio de 2025, el señor López Ramos nuevamente solicitó ante el TPI la divulgación de dónde reside su hijo. En reacción y, sin brindarle la oportunidad a la señora Padilla Rodríguez para reaccionar, el 12 de junio de 2025, el foro primario ordenó a la señora Padilla Rodríguez suministrar al señor López Ramos la dirección solicitada, so pena de la imposición de severas sanciones.

En desacuerdo, la señora Padilla Rodríguez instó un petitorio de reconsideración en donde expuso que: la dirección solicitada fue provista a la trabajadora social; esta última investigó y redactó un informe favorable, en el cual, recomendó el cierre del caso; luego de lo cual, el foro primario dio por cumplido el asunto. A lo antes añadió:

> [n]o existe justificación procesal ni fáctica para ahora revertir lo dispuesto originalmente y exigir que la parte demandada revele su dirección personal a la parte demandante, máxime cuando el padre no realiza recogido o entrega del menor en ese domicilio ni existe régimen de relaciones filiales que así lo requiera. Esta

nueva exigencia no fue debatida ni ordenada durante la vista del 9 de abril, ni existe base nueva que lo justifique en derecho.

Mediante una *Resolución,* emitida el 1 de julio de 2025, el foro primario denegó el petitorio de reconsideración de la señora Padilla Rodríguez, so pena hallarla incursa en desacato. Vencido el término concedido a esos efectos, el 11 de agosto de 2025, el señor López Ramos solicitó al foro primario la imposición de desacato y sanciones en contra de la señora Padilla Rodríguez.

En respuesta, el 23 de septiembre de 2025, el foro primario dictó una *Orden* concediendo a la señora Padilla Rodríguez diez (10) días para notificar al señor López Ramos la dirección residencial del menor, so pena de imponerle sanciones económicas de $500.00, a favor de este último.

En reacción, la señora Padilla Rodríguez instó una *Moción en Cumplimiento de Orden* en la cual hizo constar que:

> [l]a Sra. Padilla no ha compartido su dirección residencial con la parte demandante por razones de seguridad personal. Hace tres (3) cambios de domicilio, ocurrió un incidente que la llevó a abstenerse de divulgar su dirección al Sr. López. Desde entonces, todas las transiciones y recogidos del menor se han realizado en la residencia de los abuelos maternos, práctica conocida por el Tribunal y que ha funcionado sin incidentes.

Hizo constar, además, que la falta de una orden de protección vigente no obedece a una ausencia de preocupación ni incide sobre su carácter de víctima. Puntualizó que, la confidencialidad de su lugar de residencia evitará escenarios de riesgo, y protegerá la estabilidad emocional y física tanto de las partes como del menor.

Acompañó su petitorio de una Certificación Médica, expedida el 30 de septiembre de 2025, en donde la Dra. Lydiaris González Reyes consignó que, debido a sus padecimientos de dislipidemia, hipertensión arterial, enfermedad coronaria, angina de pecho, aterosclerosis de aorta, historial de cateterismo y angioplastia, la señora Padilla Rodríguez "no puede estar bajo situaciones de estrés

agudo, constante y limitante a sus tareas diarias y rutinarias. Cualquier evento de este tipo puede exacerbar la sintomatología y patología [e]xistentes. Hasta puede provocar muerte." Lo antes, a modo de sustentar que no puede entregar al señor López Ramos la información solicitada, por razones de privacidad, seguridad y salud, sin que lo antes redunde en menoscabo de las relaciones paternofiliales que por años él ha mantenido con el menor, a través del hogar de los abuelos maternos como punto de encuentro.

Cabe destacar que, entre los remedios que solicitó al TPI en su escrito, la señora Padilla Rodríguez incluyó el señalamiento de una vista evidenciaria a los efectos de presentar prueba sobre su historial de victimización y la necesidad de salvaguardas, en ausencia de una orden de protección.

Evaluadas las posturas de las partes, el foro primario dictó la *Resolución Interlocutoria* impugnada, mediante la cual, desglosó los tres (3) dictámenes previos que la señora Padilla Rodríguez incumplió, a pesar de los apercibimientos esbozados. A esos efectos, expuso lo siguiente:

> [h]abiendo la Sra. Padilla Rodríguez incumplido con las órdenes emitidas el 12 de junio de 2025, 1 de julio de 2025 y 23 de septiembre de 2025, este Tribunal impone una sanción de $500.00 a la Sra. Padilla Rodríguez, a ser pagadas al Sr. López Ramos. Tenga sesenta (60) días para el pago de dicha sanción, s[o] pena de sanciones económicas.

> Tenga diez (10) días para cumplir con las órdenes antes indicadas so pena [de] sanciones económicas de $500.00 a ser pagadas al Sr. López Ramos.

Inconforme, la señora Padilla Rodríguez insta el presente recurso de *Certiorari* ante este Tribunal en el cual imputa al foro primario lo siguiente:

> Erró el TPI al exigir divulgación directa del domicilio al Recurrido, aun cuando: (i) existía un mecanismo suficiente y validado por el propio Tribunal, canalizando la dirección a la Unidad Social sin constarla en autos; y (ii) no hay disposición legal que imponga revelar el domicilio en un escenario sin régimen que requiera intercambio en la residencia materna.

Erró el TPI al desatender la política pública de protección a víctimas de la Ley 54-1989 y la protección constitucional de intimidad y seguridad, a pesar de que la Peticionaria acreditó prima facie su condición de víctima y el riesgo real asociado a divulgar su dirección.

Erró el TPI, y abusó de su discreción, al imponer una sanción desproporcionada de $500.00 sin explicar por qué, sin evaluar si era necesaria para lograr cumplimiento y sin identificar desobediencia contumaz o perjuicio.

En cumplimiento con nuestra *Resolución,* notificada el 24 de noviembre de 2025, el señor López Ramos presenta su *Oposición a la Expedición de Certiorari.* En síntesis, expone tener derecho a conocer la dirección de su hijo "para poder ejercer su derecho a visita, comunicarse con él y tener la certeza de que está en un lugar seguro." Argumenta que, obstruir las relaciones paternofiliales y distanciar al menor de su padre va en contra del bienestar del menor. Cuestiona que la señora Padilla Rodríguez pretenda acreditar su condición de víctima mediante una certificación médica, sin un desfile de prueba y sin la posibilidad de contrainterrogar y cuestionar la validez de tal alegación.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al.*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá "cuando se recurra de una orden o resolución al amparo de las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. Sin embargo, por excepción, el foro apelativo intermedio podrá revisar una orden o resolución interlocutoria dictada por el tribunal de instancia cuando se recurra de la determinación en un caso de relaciones de familia, entre otros." (Nota omitida.) *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, **en casos de relaciones de familia**, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, señala los criterios que debemos tomar en consideración al

evaluar si procede expedir el auto de *certiorari*. La citada Regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida como la etapa del procedimiento en la cual fue presentada. Lo anterior, a los fines de determinar si es la más apropiada para intervenir sin ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008).

Es norma reiterada que, el foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen que emitió el foro de instancia es abitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). A tenor de la Regla 11(C) de nuestro

Reglamento, *supra,* cuando la citada Regla 52.1 impida expedir el auto de *certiorari,* procede denegar su expedición.

**III.**

En su recurso, la Peticionaria solicita que ejerzamos nuestra función discrecional para dejar sin efecto la orden del foro primario que le requiere proveer al Recurrido la dirección residencial que comparte con el menor hijo de ambos. La Peticionaria también procura que analicemos si la actuación del TPI atentó contra la política pública de Puerto Rico de proteger a las víctimas de violencia doméstica. Por último, que dispongamos que el TPI abusó de su discreción al imponer, en contra de la señora Padilla Rodríguez, una sanción de $500.00, a favor del señor López Ramos. Por su estrecha relación entre sí, discutiremos los errores conjuntamente.

Tal cual detallamos en el tracto procesal, los resultados de la investigación que llevó a cabo la trabajadora social de la Unidad Social de Relaciones de Familia y Asuntos de Menores, tras visitar la residencia en donde vive el menor con la Peticionaria, fueron favorables para la señora Padilla Rodríguez. Surge de su correspondiente informe que, la señora Padilla Rodríguez y su hijo viven alquilados en un ambiente comunitario de poca incidencia delictiva y conflictos sociales. La trabajadora social también especificó que, la habitación del menor es propia para su edad y que la señora Padilla Rodríguez cuenta con transportación propia. Agregó que, la residencia tiene hospitales, escuelas y lugares recreativos accesibles, y que los vecinos más cercanos son mayores de edad.

Nótese que, el señor López Ramos no impugnó de forma fehaciente el referido informe de la Unidad Social, ni los hallazgos que realizó la trabajadora social. Más bien, y a pesar de que el foro primario dio por cumplida la referida investigación, la cual resultó ser favorable para la señora Padilla Rodríguez, el Recurrido solicitó

nuevamente al TPI que ordenara a la Peticionaria proveer su dirección.

Precisa destacar que, no surge del expediente que existan problemas de relaciones paternofiliales entre el Recurrido y el menor de diez y seis años (16) de edad. Por el contrario, se desprende que, por años, estas se han realizado, libre de inconvenientes, en el hogar de los abuelos maternos, lo cual la señora Padilla Rodríguez hizo constar que continuará cumpliendo.

A lo anterior se añade que, la Peticionaria presentó ante el TPI unas alegaciones sobre su carácter de víctima, sobre la presunta necesidad de mantener la confidencialidad de su dirección residencial, sobre potenciales escenarios de riesgo y sobre la obligación de proteger su salud y seguridad, lo antes, sin menoscabar las relaciones paternofiliales entre el Recurrido y el menor. Sustentó sus alegaciones en un certificado médico del cual se desprenden las condiciones de salud que padece y los posibles efectos a su salud de exponerse a situaciones de estrés agudo.

Constatamos del expediente que, previo a ordenar a la Peticionaria suministrar su dirección residencial al Recurrido, el foro primario no le concedió a la Peticionaria la oportunidad de expresarse. Observamos además que, en una ocasión anterior, el foro primario atendió el mismo petitorio del señor López Ramos y lo concedió a favor de la recurrida, sin menoscabar los derechos del peticionario lo cual resultó en la presentación del informe de la unidad social sin necesidad de divulgar la dirección en controversia. En esta ocasión tampoco celebró una vista evidenciaria a los efectos de permitir que la señora Padilla Rodríguez sustente sus alegaciones mediante prueba.

En atención a lo anterior y como medida de extrema cautela ante la naturaleza de las alegaciones de la Peticionaria, esta Curia concluye que procede la celebración de una vista evidenciaría. En

su consecuencia se autoriza a la señora Padilla Rodríguez a presentar ante el foro primario la evidencia que entienda pertinente para sustentar sus alegaciones, a la luz de su presunto historial de victimización, la necesidad de salvaguardas, entre otros, prueba que desde luego el Recurrido podrá impugnar y rebatir, como salvaguarda al debido proceso de ley de ambas partes.

Por los fundamentos expuestos, concluimos que el TPI cometió los errores que se le imputan por lo que nos encontramos en la etapa de los procesos en la que se reúnen los criterios al amparo de la Regla 40 de nuestro Reglamento, *supra,* que fundamentan nuestra intervención sobre el dictamen recurrido.

**IV.**

Por las razones que anteceden, expedimos el auto de *Certiorari,* revocamos el dictamen recurrido y devolvemos este asunto al foro primario para que celebre una vista evidenciaria, conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones